Clayton W. HOLLEY, Plaintiff,

v.

Shirley S. CHATER, Commissioner
of Social Security, Defendant.

No. 94–8179–CIV.

United States District Court,
S.D. Florida.

April 30, 1996.

Phillip C. Houston, Houston & Shalhoub, P.A., West Palm Beach, FL, for plaintiff.

Arnold T. Aikens, Asst. U.S. Atty., Miami, FL, for defendant.

## ORDER AFFIRMING MAGISTRATE'S REPORT AND RECOMMENDATION

RYSKAMP, District Judge.

THIS CAUSE came before the Court upon Magistrate Judge Vitunac's Report and Recommendation issued on March 26, 1996. The Report and Recommendation advises this Court to deny Plaintiff's Motion for Summary Judgment, grant Defendant's Cross Motion for Summary Judgment, and affirm the decision of the Commissioner. To date, the Plaintiff has not filed any written objections to Judge Vitunac's Report.

THE COURT has considered the recommendations and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that United States Magistrate Judge Vitunac's Report and Recommendation is hereby RATIFIED, AFFIRMED and APPROVED in its entirety:

(1) Plaintiff's Motion for Summary Judgment (DE 8) is hereby DENIED;

(2) Defendant's Cross Motion for Summary Judgment (DE 12) is hereby GRANTED; and

(3) The Commissioner is hereby AFFIRMED.

(4) THE CLERK OF THE COURT SHALL CLOSE THE CASE AND DENY ALL PENDING MOTIONS AS MOOT.

DONE AND ORDERED.

### REPORT AND RECOMMENDATION

VITUNAC, United States Magistrate Judge.

This cause is before this Court upon Order of Reference (DE 3) from United States District Court Judge Kenneth L. Ryskamp to issue a Report and Recommendation. For the reasons enumerated below, this Court recommends that the ALJ's decision denying benefits be affirmed.

### I. CASE HISTORY

On September 20, 1989, plaintiff Clayton W. Holley applied to the Commissioner of Social Security for a period of disability and disability insurance benefits alleging that he became unable to work due to asbestosis since April 1987 (Tr. 163–75).[1] The Social Security Administration denied the application both initially and on reconsideration (Tr. 176–77, 180–81). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). On October 9, 1990, a hearing was conducted in which the plaintiff was represented by counsel (Tr. 56–91). Thereafter, the ALJ issued a decision dated November 1, 1990 finding plaintiff not disabled and denying the claim for benefits (Tr. 417–23).

Plaintiff next sought review from the Appeals Council. Review was granted, and the ALJ's decision was vacated and remanded to obtain further Vocational Expert ("VE") testimony (Tr. 429–30). The ALJ's decision following the second hearing was also vacat-

1. Plaintiff filed a prior application, which was denied by the state agency on August 1, 1988 (Tr. 152–55). On November 3, 1988 the Social Security Administration issued a decision denying benefits based upon the state agency's recommendation (Tr 161–162). Mr. Holley did not fully exhaust his available administrative remedies at that time, therefore, the November 3rd decision became final and binding.

ed and remanded by the Appeals Council (Tr. 438–45, 457–459). For the third hearing, the ALJ was instructed to obtain further evidence, re-evaluate the medical record, and pay particular attention to a statement of disability that had been prepared by plaintiff's treating physician (Tr. 458–59).

On July 29, 1993, after the third administrative hearing, ALJ Ruben Rivera issued a decision finding the claimant not disabled and denying the claim for benefits (Tr. 13–23). This became the final decision of the Commissioner of Social Security ("Commissioner") (Tr. 6–7). On April 1, 1994, plaintiff filed this action in Federal Court seeking review. Defendant answered the complaint and filed a transcript of the administrative proceedings. On April 27, 1995, plaintiff moved for summary judgment (DE 8). Defendant then cross-moved for summary judgment (DE 12). This matter is ripe for adjudication.

## II. *STANDARD OF JUDICIAL REVIEW*

■ The Social Security Act dictates that the Secretary's factual findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990); 42 U.S.C. § 405(g). Accordingly, the scope of this Court's review of the Secretary's factual determinations is limited to whether the findings are supported by "substantial evidence." *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.1991). This Court may not decide the facts anew, may not reweigh the evidence, and may not substitute the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence. *Martin*, 894 F.2d at 1529. Nevertheless, the reviewing court should not act as an "automaton," it should carefully scrutinize the entire record to determine if the decision reached by the ALJ is "reasonable and supported by substantial evidence." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

■ Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnes v. Sullivan* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). This Court need not

determine whether it would have reached a different result based upon the record. *Id.* Even if the evidence supports an alternate decision than that reached by the Secretary, this Court must affirm if the decision is supported by substantial evidence. *Barnes v. Sullivan* at 1358 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)).

## III. *PROCEDURES AND STANDARDS RELATING TO DISABILITY CLAIMS*

■ A claimant is entitled to disability benefits when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. § 423(d)(1)(A) (1988). The Secretary has developed a five-step sequential evaluation process to be applied when determining whether a claimant is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Holladay v. Bowen*, 848 F.2d 1206, 1207 (11th Cir.1988) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986)).

At step one of the evaluation process, the ALJ must ascertain whether the claimant is presently engaged in substantial, gainful activity. If the claimant is not so engaged, the ALJ proceeds to step two. At step two, the ALJ must determine if the claimant is suffering from an impairment or combination of impairments which are severe. Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. If the ALJ finds no severe impairments, the evaluation ends. If a severe impairment is found, the ALJ proceeds to step three. At step three, the ALJ must determine whether the claimant's impairment meets or equals one of the listed impairments set forth in 20 C.F.R. Pt. 404. Subpt. P, App. 1. If the answer to step three is yes, the claimant is conclusively presumed to be disabled. If the answer is no, the ALJ moves on to step four to determine if the claimant is able to perform his past relevant work despite his "severe" impairment. If the claimant is able to perform his past relevant work, the claimant is not disabled and the analysis ends. However, if the claimant is not able to perform his past relevant work, the ALJ

must proceed to step five. At step five, the ALJ must determine whether the claimant is able to perform other work in the national economy in view of his age, education and work experience. The claimant is entitled to a finding of disabled only if he is not able to perform other work. *See, e.g.,* 482 U.S. 137, 107 S.Ct. 2287; 848 F.2d 1206; 800 F.2d 1026.

## IV. *REVIEW OF THE ADMINISTRATIVE RECORD*

Plaintiff alleges that as a result of "severe chronic obstructive pulmonary disease, asbestosis, emphysema, blockage of the left anterior descending artery, pneumonitis, bronchitis, shortness of breath, low back and leg pain, chest pain, pain in his knees and hands, insomnia and fatigue" he is unable to work and entitled to Social Security Disability benefits (DE 8, page 2). The record indicates that Mr. Holley was last gainfully employed prior to September 20, 1989 (Tr. 15, 21). At the time he ceased working, plaintiff was 42 years old and employed as a dry wall installer.

The relevant medical history begins in February 1987, when plaintiff was hospitalized complaining of chest discomfort and shortness of breath (Tr. 323). After consultation with a pulmonary specialist, plaintiff was diagnosed with acute bronchitis, interstitial abnormality, and alcohol abuse *(Id.)*. The record indicates that Mr. Holley left the hospital against medical advice before a complete work-up was obtained *(Id.)*. Upon re-admission in April, 1987 plaintiff was found to have physical findings, such as rales and clubbing of the fingers, consistent with decreased pulmonary efficiency *(Id.)*. Further record evidence indicates that, at this time, reviewing physician Dr. Rosen opined plaintiff's "chest pain and shortness of breath are way out of proportion to the abnormalities on pulmonary function study. I suspect that there is a large functional component to the patient's complaints" *(Id.)*. Lung tissue samples did not evidence asbestosis bodies.[2] In

response to these findings, the Director of the Canadian Reference Center of Cancer Pathology, stated that morphological changes observed in plaintiff's lungs could be caused by exposure to asbestos, however, "proof of that is not present in this material" *(Id.)*.

On request of his counsel, claimant was later evaluated by Dr. Robert Mezey, M.D. (Tr. 243–277). Dr. Mezey observed clubbing of the plaintiff's fingers but no evidence of cyanosis or edema (Tr. 244). Chest X-rays were interpreted by Dr. Mezey as consistent with "abundant bilateral pulmonary fibrosis along with pleural thickening consistent with pulmonary asbestosis" *(Id.)*. According to the record, Dr. Mezey believed plaintiff to suffer pulmonary asbestosis without evidence of major air flow obstruction (Tr. 245).

The Office of Disability referred plaintiff to Dr. Steven Kanner, D.O., a Diplomate of the American Board of Internal Medicine, for an examination in November, 1989 (Tr. 309–313). Based upon his examination and pulmonary function studies, Dr. Kanner opined that plaintiff did in fact suffer asbestosis but could "easily perform light work" (Tr. 312).

Later, in May of 1990, plaintiff was examined by Dr. Feingold, Chief of the Pulmonary and Hyperbaric Medicine Department at South Miami Hospital (Tr. 322–36). In his report, Dr. Feingold stated that Mr. Holley "does not have asbestosis" (Tr. 327). Instead, Dr. Feingold felt plaintiff had an undifferentiated pulmonary fibrosis potentially amenable to treatment (Tr. 328).

Throughout this period, from April 1987 through February 1992, plaintiff received treatment at the Palm Beach County Health Unit (Tr. 337–62, 367–71). Results of spirometry testing performed there indicated a mild air flow obstruction (Tr. 340). Arterial blood gas testing was also consistent with mild chronic obstructive pulmonary disease (COPD), and mild reduced diffusion capacity (Tr. 368).[3] A medical progress note dated February 19, 1991 states plaintiff was "feeling well" (Tr. 405). Further record evidence indicates that throughout this period claim-

---

**2.** The presence of asbestosis bodies upon histological exam are one of the prerequisites for confirming a diagnosis of asbestosis.

**3.** Mild COPD was also observed in May 1990 (Tr. 369).

ant was repeatedly instructed to stop smoking (*Id.*).[4]

In December, 1991 Dr. Murray Gilman, a medical examiner appointed by the Secretary of Health and Human Services, reviewed plaintiff's medical records (Tr. 393–398).[5] Dr. Gilman determined that Mr. Holley had a "respiratory impairment secondary to idiopathic interstitial fibrosis" (Tr. 395). Dr. Gilman felt that earlier work restrictions placed upon plaintiff by other physicians were too severe and not supported by the medical evidence since the majority of pulmonary testing had indicated only mild to moderate dysfunction, therefore, Dr. Gilman found Mr. Holley capable of performing "at least medium work" (Tr. 398).

The record indicates that plaintiff was later examined by Dr. William Greenman in April of 1993 (Tr. 469–470). Dr. Greenman observed plaintiff to be a "healthy appearing man who did not appear to be acutely or chronically ill" (Tr. 469). Dr. Greenman found no objective medical evidence that would preclude Mr. Holley from mild to moderated physical exertion (Tr. 470). Several months later, in July 1993, Dr. Joseph Giaimo examined claimant and interpreted objective testing to demonstrate a moderate to severe degree of large airway obstruction, resulting from "moderate to severe COPD" (Tr. 483).

The record contains transcripts from the three administrative hearings conducted in this case. At each hearing, Mr. Holley testified regarding his physical condition. At various times, plaintiff stated that he is able to stand only 15 to 20 minutes, sit for approximately half an hour and walk, at most, one half block before suffering chest pain, tightness, and difficulty breathing (Tr. 62–63, 138–39). In addition, Mr. Holley related that he aids in the care of his disabled son (*See* Tr. 65, 101, 132). As part of this care, plaintiff testified that he occasionally lifts his son who weighs 50 pounds (Tr. 105).

## V. FINDINGS OF THE SECRETARY

The ALJ found plaintiff to have chronic obstructive pulmonary disease severe enough to preclude him from returning to his past work as a dry wall installer. (Tr. 21–22). However, after reviewing the entire administrative record, hearing the testimony of the plaintiff, eliciting the testimony of a Vocational Expert and consulting the Grids, the ALJ found plaintiff to have the residual functional capacity to perform "light work except that he should avoid exposure to excessive fumes, dust and noxious odors" (Tr. 22). Therefore, Mr. Holley was found not disabled and his claim for benefits was denied.

## VI. DISCUSSION

After a thorough review of the record, the Court finds substantial evidence to support the ALJ's conclusion that Mr. Holley is not disabled and therefore should be denied benefits.

The plaintiff has alleged several errors on the part of the ALJ. Among these, plaintiff contends the ALJ improperly discredited his subjective complaints of pain and the opinions of his treating physicians. Further, plaintiff alleges the ALJ failed to consider the effect of all his impairments acting in combination, and improperly applied the Grids. Finally, plaintiff argues that additional evidence he submitted to the Appeals Council mandates a remand. The Court will address each of these allegations individually to demonstrate that the ALJ's ruling should not be reversed for error and is supported by substantial evidence of record.

### A. CREDIBILITY OF PLAINTIFF'S SUBJECTIVE COMPLAINTS

The ALJ found plaintiff's subjective complaints of pain somewhat credible but noted they would not support a finding of disability (Tr. 22). The ALJ based his disbelief of the plaintiff's subjective complaints of pain on

---

4. The record abounds with references to plaintiff's alcohol and cigarette abuse (Tr. 243, 288, 291, 307, 310, 322, 338, 356, 360, 368, 369, 371, 374, 375, 377, 378, 381).

5. Dr. Gilman is a non-examining physician, therefore, his opinion is to be accorded reduced weight. *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir.1985) (citing *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984)).

inconsistencies in plaintiff's testimony and the evidence of record (Tr. 22).

In this Circuit, it is well settled that a claimant's subjective testimony of pain must be considered if evidence is found of either an underlying medical condition, or (1) objective medical evidence confirms the severity of the pain, or (2) the objectively determined medical condition is severe and consistent with the level of alleged pain. *Foote v. Chater*, 67 F.3d 1553 (11th Cir.1995) (citing *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir.1986)). However, a plaintiff's statements about pain other subjective symptoms will not alone establish disability. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir.1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir.1986)). At minimum, the underlying impairment or cause of the pain must be medically determinable. *Francis v. Heckler*, 749 F.2d 1562, 1564 (11th Cir.1985) (citing *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir.1982)).

Other Circuits have expressed opinions regarding when subjective complaints of pain may be properly discounted. For example, the Eighth Circuit has ruled that when the claimant undertakes activities inconsistent with the type or degree of pain claimed, his allegations may be properly discounted. *Bolton v. Bowen*, 814 F.2d 536, 538 (8th Cir.1987). A claimant's allegations of disabling pain may be discounted by evidence that, "[h]e drives a car, shops for groceries, sits or stands with little discomfort ... can lift modest weights without difficulty and weights up to about twenty-five pounds with little difficulty." *Edwards v. Secretary of HHS*, 809 F.2d 506, 508 (8th Cir.1987). However, the Sixth Circuit has ruled that the ability of a claimant to perform light housekeeping and drive a car is not alone substantial evidence of the existence of residual functional capacity sufficient to deny disability benefits. *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("A man is disabled within the meaning of the Act, if he can engage in substantial gainful activity only by enduring great pain").

Mr. Holley contends he is totally disabled and has pain and shortness of breath following even minimal exertion. Based on this allegation, plaintiff argues he is unable to hold any job in the national economy. The objective medical record taken in its entirety does not support this contention. For example, at the second administrative hearing, held in February 1992, plaintiff testified he was capable of lifting 50 pounds on occasion (Tr. 105). Further, at the final administrative hearing, plaintiff testified he can lift a gallon of milk without pain or shortness of breath (Tr. 137). Record evidence also demonstrates that claimant assists in the care of his disabled son, including dressing him and changing his intestinal bag even though he weighs 50 pounds (Tr. 65, 101, 105, 132–133). The Court is sympathetic to Mr. Holley's responsibilities in caring for his disabled son, however, such activities do not reflect an inability to perform light work.

Statements by plaintiff to various examining physicians also support the ALJ's decision in this case. Mr. Holley provided answers in *Disability Report Forms* in both 1988 and 1999 indicating that he fishes, hunts, performs light yard work, odd jobs around the house, reads, shops, and visits with relatives and friends (Tr. 187, 195). These statements are contradicted by the plaintiff's administrative hearing testimony, wherein he stated that due to the severity of his condition he could not hunt, fish, perform yard work or help with household chores (Tr. 65, 66). Noted inconsistencies of record give credence to the ALJ's decision.

Claimant also contends that exposure to fumes and odors results in shortness of breath and chest tightening (Tr. 101–102). However, the record is replete with references to plaintiff's cigarette use. (*See Supra* fn. 4). At one administrative hearing, the ALJ specifically asked plaintiff whether cigarette smoke aggravated his pulmonary condition (Tr. 101). He answered, "Not as bad [as compared to gasoline and clorox] because I used to smoke" (Tr. 102). The logical inference of this testimony is that plaintiff is capable of adapting to odors which initially cause discomfort. Therefore, his allegation that a portion of his disability results from a sensitivity to fumes is not credible. Moreover, the continued use of cigarettes by plaintiff suggests that his pulmonary condition is

not as severe has he alleges and further supports the ALJ's decision to accord Mr. Holley's subjective complaints diminished weight.

Finally, objective medical testing data indicates only mild to moderate respiratory problems and does not account for the level of pain and discomfort plaintiff alleges.[6] For example, spirometry results obtained in September of 1989, and blood gas studies performed almost a year later indicated only mild COPD (Tr. 340, 378). Pulmonary function tests indicated "mild obstructive ventilatory dysfunction" (Tr. 369). Further, in December 1991, Dr. Gilman reported "normal spirometry, normal arterial blood gas studies, and a diffusing capacity of 56% [plaintiff] should be able to perform at least medium work" (Tr. 398). Objective testing data of record does not support a finding that plaintiff is totally disabled.

The ALJ's decision to afford diminished weight to the plaintiff's subjective complaints was proper under the regulations and adequately supported by substantial record evidence. Logical inconsistencies in the record demonstrate that the ALJ made much more than a conclusory evaluation of plaintiff's allegations. The Court finds the ALJ's decision to discredit Mr. Holley's subjective symptoms to be supported by substantial record evidence.

## B. THE ALJ PROPERLY DISCREDITED THE REPORTS OF TREATING PHYSICIANS

■■■■■ A treating physician's opinion is generally afforded substantial weight, though "it is not necessarily dispositive." *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir.1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir.1986)). Specifically, if the treating physician's opinion is merely conclusory and/or is not supported by objective medical evidence, it may be discounted. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987). Nevertheless, an ALJ may not reject medical

opinions without offering some explanation. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986). Further, the "requisite good cause" necessary to discount a treating physician's opinion cannot be provided solely by the report of a non-examining physician. *Johns*, 821 F.2d at 554.

■■■ Plaintiff in his Memorandum in Support of his Motion for Summary Judgment (DE 8), argues that the ALJ improperly discredited the opinions of treating physicians Dr. Lipman, Dr. West, Dr. Mezey and Dr. Giaimo (*Id.* at 7). However, only Dr. Lipman actually diagnosed plaintiff as disabled. The other physicians did, as plaintiff asserts, diagnose serious pulmonary conditions. However, the ALJ found plaintiff not disabled and capable of performing "light" work in spite of his "severe chronic obstructive pulmonary disease" (Tr. 21–22). Therefore, the Court will focus only on whether or not the ALJ improperly discredited the opinion of Dr. Lipman since only Dr. Lipman found plaintiff totally disabled.

Dr. Lipman, in a letter dated July 20, 1992, stated that plaintiff was being treated for "severe asbestosis confirmed on chest x-ray and pulmonary function studies" and that Mr. Holley was totally disabled and not able to seek gainful employment (Tr. 450). Plaintiff argues that Dr. Lipman's opinion should be conclusive evidence that he is totally disabled and entitled to benefits. The ALJ found Dr. Lipman's opinion directly contradicted by objective testing data and the opinions' of other examining physicians.

Plaintiff contends that the ALJ, placed undue emphasis upon the opinion of Dr. Greenman in deciding to discredit the opinion of Dr. Lipman (DE 8 at 7). However, Dr. Lipman's determination of disability is contradicted by record evidence. For example, Dr. Feingold thoroughly reviewed the record, examined plaintiff and stated that it was his opinion, to a reasonable degree of medical certainty, that Mr. Holley does not have as-

---

**6.** Plaintiff has submitted additional medical records that purport to indicate that at the time in question he suffered ischemic heart disease and underwent angioplasty. Plaintiff contends these records lend support to his complaints as to the degree of pain he alleged. The Court, for reasons explained below, does not find the proffered records sufficient to change the result in this case.

bestosis (Tr. 327).[7] Dr. Feingold instead offered the diagnosis of diffuse interstitial pulmonary fibrosis and strongly recommended further invasive testing to determine if plaintiff's condition would be amenable to treatment (Tr. 328). Additionally, the record reveals that Dr. Steven Kanner, D.O., found plaintiff capable of "at least" light duty work in spite of his pulmonary condition (Tr. 312).

In addition, objective medical testing data in the record does not support the opinion of Dr. Lipman.[8] Results of numerous medical tests including spirometry and arterial blood gas studies indicated the presence of only mild COPD (Tr. 340, 369, 378, 398).

Also supporting the ALJ's decision are statements made by the plaintiff to examining physicians. On numerous occasions plaintiff stated that he could easily perform sedentary work and was "feeling generally well," "doing fine," and "feeling fine" (Tr. 312, 340, 369, 405). These declarations are inconsistent with the opinion Dr. Lipman that plaintiff is totally disabled.

Plaintiff argues that the ALJ should have contacted his treating physician in an attempt to obtain further information before discounting Dr. Lipman's opinion (DE 8 at 10). However, plaintiff's argument is premised upon the assumption that the evidence obtained from treating physician[s] was inadequate (Id.). In the instant case, the Appeals Council had remanded with specific instructions to review Dr. Lipman's records. After review, the ALJ found Dr. Lipman's opinion directly contradicted by substantial objective testing data, opinions of other examining physicians, and statements of the plaintiff himself. In this case, there was no need to obtain additional information before making a decision.

Although a treating physician's opinion is generally to be accorded substantial weight, in the present case there is substantial evidence in support of the ALJ's rejection of Dr. Lipman's opinion. Edwards v. Sullivan, 937 F.2d 580, 583–584 (11th Cir.1991) (treating physician's opinion will be given controlling weight only if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record); See also, Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir.1986) (noting that it is the ALJ, not the court, who must weigh the evidence and resolve material conflicts in the evidence). Any allegation that the ALJ improperly discredited the opinion Lipman is quite frivolous. The decision of the ALJ is reasonable and substantial evidence supports his findings. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir.1990).

## C. COMBINED EFFECT OF PLAINTIFF'S CONDITIONS

Plaintiff contends the ALJ failed to evaluate the claimant as a "whole person" by considering the possibility that he was disabled as a result a combination of impairments (DE 8 at 6–7). In his Motion for Summary Judgment (DE 8), plaintiff fails to state which impairment[s] he alleges the ALJ failed to investigate. However, a review of the record evidences references to depression, alcoholism, side-effects of prescribed medication, and back and leg pain. The Court will view each of these in turn.

■ References to feelings of anxiety and depression suffered by claimant exist in the record (Tr. 206, 307, 381). However, there is no evidence to indicate claimant was depressed for a period of twelve months, as required by the Act, or that such feelings caused significant limitations in basic work activities. The Court thus finds that plaintiff is not disabled due to anxiety or depression.

■ Also contained in the record are notations concerning plaintiff having back and leg pain (Tr. 243, 310, 311). At the final Administrative Hearing claimant testified that back pain limits his movement (Tr. 139–140). However, Dr. Kanner found plaintiff to have a negative straight leg raising test, normal reflexes and muscle tone, and no problems in rising from a seated position (Tr. 311). These physical findings are inconsis-

---

7. In his review, Dr. Feingold noted that "pulmonary function studies revealed only minor abnormalities" (Tr. 326).

8. For a more thorough discussion of the objective testing data of record see Sections II and VI(A) Supra.

tent with debilitating back and leg pain. In addition, the plaintiff was questioned by the ALJ as to the severity, nature, and limitations imposed by his alleged back pain (Tr. 139–40). Plaintiff answered that as a result of scar tissue from previous surgery, he gets a "kink" in his back (Tr. 140). Other than notations in the record indicating that Mr. Holley underwent surgery to correct a herniated disc approximately 15 years ago (Tr. 243), the record is silent as to any objective evidence demonstrating that severe back or leg pain existed for a period of twelve continuous months or caused significant limitations in basic work activities, as required by the Act. Therefore, the Court finds that plaintiff is not disabled as a result of back or leg pain.

■ As noted earlier, the record is replete with references to plaintiff's alcohol use (*See Supra* fn. 4). In most Circuits, before alcohol may be considered disabling, behavioral consequences must be demonstrated. For example, the Fifth Circuit has stated:

> [T]he issue of claimant's ability to control his or her use of alcohol becomes crucial only after it is determined that the claimant's condition does in fact reflect a sufficiently severe impairment resulting from alcoholism to be deemed disabling within the meaning of the Act.

*Lofton v. Schweiker*, 653 F.2d 215, 218 (5th Cir.1981). The plaintiff was questioned repeatedly throughout the administrative hearings regarding his alcohol use (Tr. 71–72, 141–142). While he did indicate that he drank heavily in the past (Tr. 142), and that his driver's license was suspended as a result of an earlier DUI conviction (Tr. 73), at no time did plaintiff indicate to an ALJ that he has suffered any problems with alcohol in years relevant, or that alcohol abuse has added to his inability to work.[9] The evidence of record therefore does not support a finding, for the years relevant, that plaintiff was disabled as a result of alcohol use.

■ Furthermore, at the final hearing plaintiff was questioned about the alleged side-effects of prescription medicine (Tr. 135–36). The claimant responded only that the medication makes him "dizzy and drowsy" (Tr. 135). This is the sole evidence in the record to indicate that Mr. Holley suffered any disabling side-effects from medication. This scant evidence is insufficient to support a finding of disability.

■ In addition, record evidence does not support a finding that claimant was disabled as a result of impairments acting in concert. At the final hearing, Mr. Holley was questioned about any and all possible ailments he suffered (Tr. 140). The ALJ specifically asked plaintiff, taking into account "all of your disabling conditions ... if we haven't all ready mentioned them. Why can't you work ...?" (Tr. 140). Thereafter, the ALJ found Mr. Holley not disabled as a result of "an impairment or combination of impairments...." (Tr. 21).

If a claimant has alleged several impairments, the ALJ must consider the impairments in combination, and determine whether their combined effect renders the claimant disabled. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir.1991) (citing *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir.1985) (citation omitted)). However, the ALJ meets this standard by specifically finding "the claimant not to suffer any impairment, or combination of impairments" sufficiently severe to prevent participation in substantial gainful activity. *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir.1986). In the present case, the ALJ found "[plaintiff] does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, regulations No. 4" (Tr. 21) and, thus, satisfied his duty under the Act.

Evidence of record, in conjunction with the ALJ's specific findings, supports a finding that the claimant is not disabled as a result of combined effects of multiple ailments.

### D. VOCATIONAL EXPERT TESTIMONY AND THE GRIDS

Claimant argues that the ALJ wrongly found him capable of performing a large

---

9. At various times during his hearing testimony, Mr. Holley stated that he never drives, however, this testimony is inconsistent with earlier statements made on disability report forms wherein plaintiff states that he drives only "when absolutely necessary."

number of jobs in the national economy. Further, that the ALJ misinterpreted Social Security regulations and did not properly apply the Grids (DE 8 at 5). It is plaintiff's assertion that the ALJ should not have applied the Grids in light of plaintiff's nonexertional limitations and that it was unreasonable to conclude plaintiff is capable of performing work at any functional level on a regular and sustained basis (DE 8 at 11). However, in making these arguments, the plaintiff has failed to note that Vocational Expert testimony was properly elicited and relied upon by the ALJ in reaching his final decision (Tr. 22, 142–149).

▮▮▮▮ In situations where a claimant's nonexertional limitations are not severe or do not "further diminish" her ability to do work at a given exertional level, use of the Grids to determine suitable alternate jobs is appropriate. *Hernandez v. Heckler,* 704 F.2d 857, 863 (5th Cir.1983). Thus, since the record does not support a finding that plaintiff's nonexertional impairments are sufficiently severe, VE testimony was unnecessary and the use of Grids alone would have been proper. Nevertheless, in an abundance of caution, the testimony of Vocational Expert Harry Haselkorn was obtained at the final administrative hearing. Vocational expert testimony is highly valued and commonly obtained in order to establish the availability of suitable alternative jobs for disability claimants. *Decker v. Harris,* 647 F.2d 291, 298 (2d Cir.1981). In addition, the answer by a VE to a hypothetical question may be relied upon as substantial evidence by an ALJ so long as the question takes into account the claimant's precise condition and limitations. *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir.1987).

▮▮▮▮ In the present case, the ALJ determined that the VE had reviewed the record and plaintiff's vocational profile and thereafter posed a hypothetical question. The VE was asked whether a person with plaintiff's specific limitations, age, education, work experience, and residual functional capacity would be capable of performing work available in the national economy (Tr. 143–44). The VE testified that for such a person, significant numbers of jobs do exist (Tr. 144–

45). As indicated, the ALJ's reliance on the testimony of VE was entirely proper and supports the finding that the plaintiff is not disabled and capable of performing jobs available in the national economy.

### E. THE ADDITIONAL EVIDENCE DOES NOT WARRANT REMAND

▮▮▮▮ Plaintiff submitted additional evidence to the Appeals Council with his request for review (Tr. 234–43), and as part of the motion for summary judgment (DE 8: Exhibit A). The Court may consider this evidence to determine whether it warrants a remand under 42 U.S.C. § 405(g). *Keeton v. Department of Health and Human Services,* 21 F.3d 1064, 1067 (11th Cir.1994). The relevant portion of 42 U.S.C. § 405(g) provides that a reviewing court has the power to:

> [O]rder additional evidence to be taken before the [Commissioner] ... upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding.

*Melkonyan v. Sullivan,* 501 U.S. 89, 97–99, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). The Eleventh Circuit has further held that the determination of whether to remand due to new and material evidence requires a *de novo* review. *Caulder v. Bowen,* 791 F.2d 872, 875 (11th Cir.1986).

▮▮▮▮ In order to obtain a remand on the basis of new evidence, the plaintiff has the burden of proving, (1) there is new, noncumulative evidence, (2) the evidence is material, it is relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level. *Caulder,* 791 F.2d at 877 (citing *Cherry v. Heckler,* 760 F.2d 1186 (11th Cir.1985)).

▮▮▮▮ Plaintiff contends that this new evidence supports his subjective complaints and there is a reasonable probability that it would change the result in this case (DE 8 at 13). In undertaking the *Caulder* analysis, the Court finds there to be good cause for the failure to previously submit this evidence

in that it did not exist and/or was unavailable earlier. However, the Court finds there is no reasonable probability that this evidence would change the result. Although the records indicate Mr. Holley previously suffered coronary vessel blockage, which might account for the substantial pain he reported, evidence indicates that angioplasty treatment was successful. Further, the plaintiff reported he was feeling well with no chest pain after the procedure (DE 8, Exhibit A). The ALJ's decision denying benefits is supported by substantial evidence in the record which is unaffected by the proffered evidence. For example, the reports of Dr. Lipman, the plaintiff's activities of daily living, and hearing testimony all lend credence to the ALJ's ruling and are unaffected by additional evidence.

Having reviewed the supplemental records, the Court finds that they are not "material" as there is no reasonable possibility that this evidence would change the result in this case. *Caulder*, 791 F.2d at 877. Consequently, the additional evidence submitted by plaintiff does not warrant a remand under 42 U.S.C. 405(g).

## VII. *CONCLUSION*

The Court finds the ALJ's decision to be supported by substantial record evidence. The decision of the ALJ to accord little weight to plaintiff's subjective complaints is supported by noted inconsistencies in plaintiff's testimony, the medical record, and other evidence of record. Likewise, the opinion of treating physician Dr. Lipman was properly discounted. Substantial evidence also supports the ALJ's ruling that no impairment or combination of impairments rendered plaintiff disabled. Finally the ALJ's use of the Grids and reliance upon Vocational Expert testimony was proper, and the additional evidence submitted by plaintiff does not warrant remand under the Social Security Act.

## VIII. *RECOMMENDATION*

This Court has carefully reviewed the record in this matter as well as the applicable law and being fully advised in the premises, this Court respectfully

RECOMMENDS the following to the District Court:

1. That plaintiff's motion for summary judgment (DE 8) be DENIED;

2. That defendant's cross motion for summary judgment (DE 12) be GRANTED; and,

3. That the decision of the Commissioner be AFFIRMED and the case be closed.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the parties shall serve and file written objections, if any, with the Honorable Kenneth L. Ryskamp within ten (10) days from the date of this report and recommendation.

DONE AND SUBMITTED this 25th day of March, 1996 at West Palm Beach in the Northern Division of the Southern District of Florida.