DECISION
This matter comes before the Court on plaintiff's appeal from a decision of the Department of Human Resources (DHS) denying her application for Medical Assistance (MA) benefits. Plaintiff seeks either a reversal of the DHS decision denying her benefits, or, in the alternative, remand of the case.
 Facts/Travel1
On March 26, 1998, the Department of Human Resources Appeal's Office entertained plaintiff's request to review DHS' decision denying her MA benefits. Earlier in that same year, the plaintiff applied for Title XIX Medical Assistance benefits.2 Because she is less than 65 years old and is not blind, she must meet the characteristic of disability in order to be eligible. Plaintiff presented medical and social information to the Medical Assistance Review Team (Team) in support of her claim of disability. The medical evidence indicates that plaintiff carries a diagnosis of Major Depressive Disorder Recurrent. Additionally, she suffers from various physical ailments.
Upon reviewing the evidence, the Team determined that the plaintiff does not meet the disability requirements of the program. Plaintiff filed a timely appeal of the rejection notice and another hearing was held. At the hearing, additional medical records were submitted into evidence. It was agreed that the Team would reconsider its decision in light of this new evidence.
On April 20, 1998, the DHS Appeals Office received notification that despite the additional evidence, the plaintiff still did not meet the disability requirements. The Appeals Office reviewed the decision and concluded that the Team was correct in its determination.3 Plaintiff was notified and the instant appeal ensued.
 Standard of Review
The Court's review of a decision of the Department of Human Services is controlled by G.L. 1956 § 42-35-15 (g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 1) In violation of constitutional or statutory provisions;
 2) In excess of the statutory authority of the agency;
 3) Made upon unlawful procedure;
 4) Affected by other error of law;
 5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (RI 1988); Carmody v. RI Conflict of Interest Commission,509 A.2d 453, 458 (RI 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's decision. Newport Shipyard v. Rhode IslandCommission for Human Rights, 484 A.2d 893 (RI 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (RI 1981)). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (RI 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island PublicTelecommunications Authority, et al. v. Rhode Island LaborRelations Board, et al., 650 A.2d 479, 485 (RI 1994).
The Department of Human Services
The Rhode Island Department of Human Services is an agency within the Executive Branch of state government. G.L. 1956 §42-12-1, et seq. Pursuant to its statutory mandate, DHS is responsible for the management, supervision and control of various social service programs. Specifically, DHS is responsible for the management of state and federally funded public financial assistance programs. G.L. 1956 § 42-12-4.
General Laws 1956 § 40-8-1 (c) provides in pertinent part:
 "[It is] declared to be the policy of the state to provide medical assistance for those persons in this state who possess the characteristics of persons receiving public assistance under the provisions of § 40-5.1-9 or § 40-6-27, and who do not have the income and resources to provide it for themselves or who can do so only at great financial sacrifice. Provided further that medical assistance must . . . qualify for federal financial participation pursuant to the provisions of Title XIX of the federal Social Security Act [42 U.S.C. § 1396 et seq.] as such provisions apply to medically needy only applicants and recipients."
DHS is responsible for administering the Medical Assistance Program within the standards of eligibility, as enumerated in G.L. 1956 § 40-8-3. For all eligible individuals, DHS must pay benefits pursuant to regulations it must develop and have approved by the federal government, as comporting with federal requirements in order to receive federal funding.
 Determining Disability
Plaintiff contends that DHS failed to apply the proper disability standard in this case by failing to follow the five-step evaluation process set forth in 20 C.F.R. § 416.920. "It [is] unclear from the decisions what, if any,standard of disability DHS is applying. Each decision consists (in large part) of pages of preprinted regulations and recitations of evidence presented, and each hearing officer concludes — without identifying what legal standard she's applying or relating the standard to her findings — that applicant is not eligible."Plaintiffs Brief In Support of Reversal of Decisions, 3-4 (emphasis included).
Plaintiff's argument is two pronged. First, she claims that DHS fails to incorporate guidelines established by the federal government — guidelines which DHS is obligated by law to utilize. Her subsequent argument is that DHS failed to apply these guidelines when evaluating and deciding her claim for MA benefits.
In order to be eligible for Medical Assistance because of a permanent or total disability, a person must have:
 "A permanent physical or mental impairment, disease or loss, other than blindness, that substantially precludes engagement in useful occupations or appropriate activities within his or her competence. Physical or mental impairment is an impairment which results from anatomical, physiological or psychological abnormalities which are demonstrable by medically-acceptable clinical and laboratory diagnostic techniques. For purposes of eligibility, an individual is disabled if he or she is unable to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Transcript of the Hearing of Maria Melendez, at 3.
 "The limitations to her physical functioning are not documented beyond the AP-63 which was completed about seven weeks following foot surgery. There was no documentation to support that these limitations persist or were expected to be permanent in nature. The assessment done by her caseworker at the Community Counseling Center which was providing her treatment for her mental condition, on 4-23-97 indicated that the appellant was doing well in ADLs. The appellant was able to attend ESL classes and expressed an interest in obtaining her GED in spite of her ongoing depression. Other than the physical limitations due to surgery, which were expected to be of 1-2 months duration, there is no evidence that suggests the appellant has deteriorated since that time." Decision of DHS Appeals Office, Docket # 98-168, Case # 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, Hearing Date March 26, 1998.
The question considered by the appeals office was whether the appellant has a disability that is so severe that it precludes her from engaging in any substantial gainful employment and is expected to last for a period of at least one year.
DHS supervises and manages public assistance programs which are funded in part, or in whole, by the federal government. G.L. 1956 § 42-12-4. The MA program is a product of the federal Social Security Act and is administered and funded by the federal government. 42 U.S.C. § 1396 et seq. DHS is thus responsible for supervising and managing the MA program. In doing so, DHS is obligated to adopt certain definitions and guidelines established by the federal government. Id. DHS must use the same definition of "disability" that is provided by the Social Security Act:
 1. "[F]or the purposes of eligibility, an individual is disabled if s/he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than twelve (12) months. . . ." 42 U.S.C. § 1382c (a)(3).
DHS must also use the same guidelines established by the U.S. Secretary of Health and Human Services for determining whether an individual is disabled for purposes of the MA program. The guidelines entail the following five-step sequential evaluation:
 1. Is the claimant engaged in a substantial activity?
 2. If not, is the impairment(s) severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment(s) prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience, and "residual functional capacity," does the impairment(s) prevent the claimant from doing other work in the national economy?
See 20 C.F.R. § 416.920; see also Brown v. Yuckert,482 U.S. 137, 141-43 (1987) (delineating the five steps). The Plaintiff argues that the "DHS regulations don't expressly incorporate the five steps . . . And don't set out a sequential analysis."Plaintiff's Brief in Support of Reversal of Decision at 3. Plaintiff contends that DHS' failure to follow the standard invalidates its decision.
DHS' regulations concerning eligibility for MA benefits are not organized like the federal government regulations, but they both contain substantially the same information. A comparison of the two shows that they both address fundamentally the same questions:
 20 C.F.R. DHS Regulations § 416.920 §§ 035.15.05. — .10, .15
1. If you are 1. Medical consideration alone can justify working (no a finding. . . . Except where other disability) evidence rebuts a finding of "disability," e.g., the individual is actually engaging in substantial gainful activity. . . . A different conclusion [other than "disabled"] may be reached where it is found that such individual is working or 2 If the has worked despite impairment(s) . . . impairment(s) is severe. 2. Primary consideration is given to the (disability) severity of the individual's impairment.
 3. [I]mpairment(s)] compatible with impairment(s) 3 If the recognized by the Social Security Administration. impairment(s) meets or equals a listed impairment in Appendix 1. (disability) 4. In such a case, [no SSI recognized 4 If the impairment or medical equivalent] it impairment(s) must be established that the physical prevents you or mental impairment(s) are of such from doing severity . . . that the individual past relevant is not only unable to do any previous work. work s/he may have done, or work (disability) commensurate with any such previous work, but the individual cannot . . . 5 If the Engage in any other kind of work Impairment(s) which exists in the national economy prevents you . . . . from doing other work. (disability)
Though the DHS regulations do not pose the questions as succinctly as the Code of Federal Regulations, it is apparent that both sets of regulations have the identical probative goal of determining disability and eligibility status. The inquiries, though not formally identical, are substantially equivalent to one another.
The answer to whether DHS applied the steps sequentially is revealed by responding to the second prong of the plaintiff's claim: that DHS failed to utilize the guidelines when evaluating this particular case. DHS is obligated to follow a "set order" of steps when evaluating a disability claim. See C.F.R. § 416.920. In doing so, the inquiry may end before all the steps are applied. "If we can find that you are disabled or not disabled at any point in the review, we do not review your claim further." Id. Specifically, "[a]n affirmative answer to questions one, two, or four leads to the next question in the sequence; an affirmative answer to questions three or five leads to a finding of disability. A negative answer to any question, other than step three, leads to a determination of `not disabled.'" Pratt v.Rhode Island Dept. of Human Services No. 96-6490, 1998 WL 64190 at *6 (RI 1998) (citing McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986)). Therefore, for example, if the answer to step one is "yes," (claimant is presently unemployed), then the inquiry moves on to step two. If the answer to question two is "no," impairment is not severe,4 then the inquiry stops, for the claimant is found not to be disabled. "The threshold inquiry at step two allows only claims based on the most trivial impairments to be rejected. If the Administrative Law Judge finds no severe impairment, the evaluation ends." Pratt at *6 (citingHolley v. Chater, 931 F. Supp. 840, 844 (S.D. Fla. 1996)).
In the case at bar, the record indicates that the DHS hearing officer began with step one and, having found the plaintiff unemployed, proceeded to evaluate whether her impairment was severe. The bulk of the decision discusses the severity of plaintiff's impairment. The hearing officer assessed the records submitted at the hearing, the reports of the plaintiff's treating physicians and counselors, and the plaintiff herself. After this exhaustive review, it was decided that plaintiff was not "disabled" within the definition and thus the sequential evaluation process was terminated.
 Reliance Upon Medical Evidence
Plaintiff argues that "the DHS hearing officer read the record, culling out portions helpful to the conclusion she wanted to reach, and overlooking the overwhelming and substantial evidence contra." Plaintiffs' Brief in Support of Reversal ofDecisions at 11. Plaintiff claims that despite the overwhelming evidence that she is disabled "at step 3 of the SSI process" the hearing officer chose to highlight the few notations in the medical records which indicate that plaintiff has had some relatively "good days."
The role of the Superior Court is to determine whether any competent evidence exists in the record to support the agency's findings. "Legally competent evidence is indicated by the presence of `some' or `any' evidence supporting the agency findings." Environmental Scientific Corp. v. Durfee,621 A.2d 200, 208 (citing Sartor v. Coastal Resources Management Council,542 A.2d 1077, 1082-83 (RI 1988)).
After reading the hearing officer's decision and the referenced medical records, it is this Court's opinion that there is substantial evidence to support the agency's finding. The April 29th decision comprehensively and accurately details the contents of each record submitted in support of plaintiff's request for benefits. The records are voluminous and while there is documentation that the plaintiff suffers from a variety of ailments5, there is also evidence that the professionals evaluating her questioned her veracity and inability to obtain and maintain employment of some kind.6 The hearing officer witnessed plaintiff's testimony and entertained her own doubts about the severity of plaintiff's limitations, both physical and mental. As previously discussed, once the determination was made that plaintiff's limitations were not severe, the sequential evaluation process was terminated. Therefore, plaintiff's argument, that her impairment satisfies level three of that analysis, is not probative.
Accordingly, this Court's review of the entire record in this matter reveals evidence sufficient enough to satisfy the definition of "legally competent" to support the agency's findings.
 DHS' Findings of Fact
The plaintiff further argues that DHS failed to make findings of fact as required by the Administrative Procedures Act. "At the outset, DHS' decisional format does not comply with § 42-35-12. What each decision entitles "Findings of Fact" is not that at all; it is really the "Travel of the Case" recitation of procedural facts not determinative of the disability issue."Plaintiffs Brief, at 6.
"Agency decisions must include findings of fact accompanied by a concise and explicit statement of the underlying findings; fact findings must be `separately stated.'" G.L. § 42-35-12. As the plaintiff indicates, mere recitation of testimony and evidence can not be substituted for this explicit and separate statement of facts. The purpose of this rule is to prevent reviewing courts from having to speculate as to the basis for the agency's conclusion.
In the instant matter, the hearing officer preliminarily set forth a series of seven facts which served also to summarize the procedural posture of the case. In other areas of the decision, the officer more specifically articulates the particulars of the medical reports and various other factors which led to the decision to deny plaintiff's claim. In this Court's opinion, the method adopted by the officer is sufficient to meet the standard set forth by the statute. The agency's decision is comprehensive enough to guide the Court though and provide support for the officer's decision.
Accordingly, this Court finds that the Department of Human Services' decision to deny MA benefits to the appellant is clearly reasonable and well-founded in law and fact. With respect to all of the above, counsel shall prepare the appropriate judgment for entry.
1 These facts are adopted from the Administrative Hearing Decision dated April 29, 1998.
2 "I feel that I need medical assistance in order to continue treatment at Community Counseling Center, Family Care — Memorial Hosp., foot care and an operation on the right foot." RhodeIsland Department of Human Services Request for a Hearing dated January 8, 1998.
3 "While she does have the well-documented diagnosis of depression, there is not sufficient evidence that supports the claim that she has marked restrictions of daily living due to this diagnosis."
4 The federal regulations describe "severe impairment" as one or more impairments: which significantly limit your physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 416.920. Age, education, and work experience are not considered at this stage of the inquiry. Id.
5 "Mental status examination also reveals that Ms. Melendez experiences significant depression and anxiety. Additionally, Ms. Melendez has visibly deformed hammer toes in both feet which will require surgery. Given her basic skills limitations, verbal memory and concentration difficulties, and the symptoms of emotional distress reported by Ms. Melendez and found upon mental status examination, it is my opinion within a reasonable degree of psychological certainty that Ms. Melendez would not be able to function adequately in a competitive work setting." PsychologicalEvaluation, August 7, 1997, Maria Garrido, Psy.D. "Q: Does the claimant suffer from an emotional impairment which significantly limits his/her ability to engage in substantial, gainful activity in a competitive setting on a full-time, ongoing basis? A: Yes."Emotional Impairment Questionnaire, April 30, 1997, Hector Jaso, M.D. "Please state claimant's diagnosis: Major Depression Disorder Recurrent." Id.
6 "It is questionable how . . . valid these hallucinations are." Community Counseling Center Progress Note, Feb. 10, 1997, Stephen L. Chabot, M.D. "She still refuses to discuss the possibility of seeking employment." Community Counseling CenterProgress Note, July 17, 1997, Stephen L. Chabot, M.D. "[Maria] states she is doing relatively well on her medications. She continues to state that from time to time she experiences auditory hallucinations and therefore she needs to continue on the Trilafon. . . . Today there still appears to be a great deal of secondary gain with continuation of treatment at this facility. She continues to reject any suggestions at all that she look for employment and is insistent that she receive some type of benefits." Community Counseling Center Progress Note, October 20, 1997, Stephen L. Chabot, M.D. "[Client] reported registrating [sic] for ESL classes at CF public high school." CommunityCounseling Center Progress Note, Caridad Ramos, BA. "She is capable of understanding and remembering short, simple instructions . . . She should be able to adapt to basic changes in a work setting." Functional Capacity Assessment, Form SSA-4734-F4-SUP, March 11, 1997, Gerald D. Fontaine, Ph.D.