**Betty HOLLADAY, Plaintiff–Appellant,**

v.

**Otis BOWEN, as Secretary of United States Department of Health and Human Services, Defendant–Appellee.**

**No. 87–7321.**

United States Court of Appeals, Eleventh Circuit.

July 8, 1988.

Nelson Simmons, Jr., Legal Services of North–Central Alabama, Inc., Decatur, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., M. Neal Reynolds, Jenny L. Smith, Asst. U.S. Attys., Birmingham, Ala., for defendant-appellee.

Before JOHNSON and CLARK, Circuit Judges, and DUMBAULD *, Senior District Judge.

CLARK, Circuit Judge:

In this case we must decide whether a regulation promulgated by the Secretary of Health and Human Services ("HHS") conflicts impermissibly with his duty to ensure that determinations of an individual's eligibility for Social Security Income ("SSI") benefits are based on a fully and fairly developed record. We must also decide whether the Secretary committed reversible error in failing to secure the testimony of a vocational expert in denying SSI benefits on the basis of an applicant's residual functional capacity. The district court affirmed the Secretary's decision that the appellant, Betty Holladay, was not entitled to SSI benefits. Having concluded that the Secretary's regulation is valid and that the Secretary fulfilled his duty, we now affirm the district court's judgment.

On August 28, 1985, appellant filed an application for SSI benefits, claiming that she is disabled as a result of a heart condition. When her application was denied, she sought a hearing before an administrative law judge. The ALJ found that Holladay is not disabled. Holladay requested a review of the ALJ's decision by the Social Security Administration's Appeals Council, but the Appeals Council concluded that there was no basis for review.

Pursuant to 42 U.S.C. § 405(g), Holladay then sought review of the ALJ's decision by filing a civil action against the Secretary, alleging that the denial of her application for SSI benefits was not supported by substantial evidence.

The Secretary has promulgated regulations detailing a "sequential evaluation process" that is to be followed in determining whether a claimant is disabled and, therefore, entitled to SSI benefits. Pursuant to these regulations, the Secretary asks the following questions:

(1) Is the claimant presently unemployed?

(2) Is the claimant's impairment severe?

(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the claimant unable to perform his or her former occupation?

(5) Is the claimant unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled." 20 C.F.R. § 416.920(a)–(f). *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986).

The third of these questions derives from 20 C.F.R. § 416.920(d), which provides:

*When your impairment(s) meets or equals a listed impairment in Appendix 1.* If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 [to 20 C.F.R. Part 404, Subpart P] or is equal to a listed impairment(s), we will find you disabled....

As the regulation's language indicates, one who has a "listed" impairment for the required duration is automatically found disabled. The "listed" impairments related to heart disease are set forth in 20 C.F.R. Part 404, Subpt. P, App. 1, 4.00(A):

---

* Honorable Edward Dumbauld, Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

*Severe cardiac impairment* results from one or more of three consequences of heart disease; (1) congestive heart failure; (2) ischemia (with or without necrosis) of heart muscle; (3) conduction disturbances and/or arrhythmias resulting in cardiac syncope.

In this case, the ALJ found that Holladay may have ischemic heart disease but concluded that the evidence before him did not confirm such a diagnosis. The ALJ reviewed the relevant medical evidence as follows:

[T]he claimant consulted her treating physician, Dr. Amit Vora, in September 1984, when she began to experience severe chest pain radiating into her left arm which had become less responsive to treatment and she was experiencing increasingly easy fatigability.... Dr. Vora suspects that claimant has suffered a prior myocardial infarction, yet, that is not confirmed by the diagnostic or laboratory tests....

... Dr. Vora ... opined possible ischemic heart disease, yet he admits that none of the evidence confirms this diagnosis and the doctor felt that further testing in the form of an arteriogram would be a more positive approach diagnostically.

Documentary Exhibits at 11. Because the available medical evidence did not reveal that Holladay suffers from ischemic heart disease, the ALJ concluded that Holladay could not be found automatically disabled pursuant to 20 C.F.R. § 416.920(d).

We review the ALJ's findings of fact by determining whether they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 1422, 1427, 28 L.Ed.2d 842 (1971). On prior occasions, we have said that "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). In an alternative formulation, we have held

that "[t]he 'substantial evidence' test is met if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

■ The ALJ relied on the results of two tests in concluding that Holladay's impairment did not meet or equal the "listed" impairment of ischemic heart disease: an electrocardiogram ("EKG") and a graded exercise tolerance test ("stress test"). As the ALJ noted, the tests suggest that Holladay may have suffered a myocardial infarction and may have ischemic heart disease. As the ALJ noted further, however, they are not firmly diagnostic of such disease. This reading of the evidence is consistent with the opinion of Holladay's treating physician, Dr. Vora, who wrote,

Mrs. Betty Holladay has been a patient of mine for approximately one year and is suffering from chest pain radiating to the left arm, and from test we could preform [sic] *I am not certain about the etiology.* However, I think she probably has ischemic heart disease.

Documentary Exhibits at 122 (emphasis added). Under these circumstances, it cannot be said that the ALJ's conclusion was not based on substantial evidence.

Holladay's contention is not that the ALJ erred in his review of the evidence before him. Instead, she argues that the record was not fully and fairly developed because the ALJ did not have the benefit of a coronary arteriogram. Indeed, Dr. Vora, along with another physician who examined Holladay during a hospital stay, believes that this test is necessary for the definition of her disease. *See* Documentary Exhibit at 83; 122.

Performance of an coronary arteriogram requires cardiac catheterization, which "involves insertion of catheters into the cardiac chambers and coronary arteries via peripheral vessels, arteries, and veins." "Radiocontrast material is [then] injected directly into each coronary artery, followed by cineography of the vessel." R. Grady & L. Gordy, 2 *Attorney's Textbook of Medicine* ¶ 30.68 (1987). The diagnostic accura-

cy of non-invasive diagnostic techniques, such as the EKG and the stress test "is in the range of 70 to 90 percent." Yet in some patients "cardiac catheterization is needed to help make a diagnosis." *Id.* Despite the accuracy of resulting diagnostic tests, "[c]ardiac catheterization requires hospitalization and is associated with a small risk of morbidity and mortality." *Id.*

One of the Secretary's regulations provides that if a claimant's "medical sources cannot give ... sufficient medical evidence about an impairment ... to determine whether [she is] disabled," the Secretary may pay for a consultative medical examination or other medical testing. 20 C.F.R. § 416.917(a). Yet because of the Secretary's duty to develop the medical record fully and fairly, this court has held that "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (citing *Ford v. Secretary of Health and Human Services,* 659 F.2d 66, 69 (5th Cir. Unit B Oct. 15, 1981)); *accord Dozier v. Heckler,* 754 F.2d 274, 276 (8th Cir.1985).

In light of this rule, Holladay believes that the ALJ committed error in failing to authorize the payment of an arteriogram. As the ALJ explained, however, one of the Secretary's regulations prohibits the procurement of such an examination by HHS:

> H. *Angiographic evidence.*
> 1. *Coronary arteriography.* This procedure is not to be purchased by the Social Security Administration.

20 C.F.R. Part 404, Subpt. P, App. 1, 4.00(H)(1). We must decide whether this regulation conflicts impermissibly with the rule we announced in *Ford* and reiterated in *Reeves.*

In resolving the validity of the Secretary's regulation, we are guided first by statute:

> The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and *provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same* in order to establish the right to benefits hereunder.

42 U.S.C. § 405(a). In the context of this provision, the Supreme Court has said that " '[w]here, as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regulation, [the Court's] review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious.' " *Bowen v. Yuckert,* —— U.S. ——, 107 S.Ct. 2287, 2293, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell,* 461 U.S. 458, 466, 103 S.Ct. 1952, 1956, 76 L.Ed. 2d 66 (1983) (footnote and citations omitted)).

The Secretary's regulations concerning the procurement, form, and analysis of medical evidence related to heart conditions are comprehensive. The two principal forms of medical evidence which the Secretary considers are those considered by the ALJ in this case: the EKG and the stress test. The prohibition against the procurement of coronary arteriography is part of this larger regulatory scheme. *See generally* 20 C.F.R. Part 404, Subpt. P, App. 1, 4.00.

We conclude that in promulgating this regulation, the Secretary has acted in a manner consistent with 42 U.S.C. § 405(a), a statute which confers broad powers upon him to decide how medical proofs are to be furnished in conjunction with disability determinations. There appears to be a sound reason for the regulation, namely, the risks associated with the procedure. Holladay acknowledges that cardiac catheterization results in death in two of every 1,000 patients, and that complications arise in some four percent of all cases. In light of these risks, we hold that the regulation prohibiting the purchase of coronary arteriography is not arbitrary and capricious.

This does not remove the apparent conflict between the Secretary's regulation

and the rule developed in *Reeves* and *Ford.* Upon examination of the source and context of the rule, however, we are convinced that the Secretary's regulation is not in tension with it. To illustrate, we return to *Ford,* in which the Court said:

> In fulfilling his duty to conduct a full and fair inquiry, the administrative law judge is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the administrative law judge to render a decision.

659 F.2d at 69. In this case, the absence of a coronary arteriogram made it impossible for the ALJ to determine with absolute certainty that Holladay does not suffer from ischemic heart disease. Yet the statute does not require absolute certainty; it requires only substantial evidence to sustain the Secretary's findings. The absence of an arteriogram did not render the ALJ incapable of making an overall disability determination. It caused him only to proceed beyond the third step of the sequential evaluation process. Without in any way retreating from the rule announced in *Ford* and *Reeves,* we conclude that the ALJ did not err in denying Holladay's request for a consultative examination.

In completing his evaluation of Holladay's claim of disability, the ALJ concluded that Holladay can perform a full range of sedentary work[1] activity in spite of her complaints of chest pain, knee pain, possible angina pectoris, shortness of breath and episodic dizziness. The ALJ relied on the residual functional capacity assessment which Dr. Vora completed in support of Holladay's application for SSI benefits. On the basis of Holladay's residual functional capacity to perform sedentary work, the ALJ then resorted to the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2 ("the Grids") to conclude that Holladay is not disabled.[2]

Holladay challenges the ALJ's conclusions regarding her residual functional capacity because she claimed to have a non-exertional impairment (i.e., pain) that limits her ability to work. *See Francis v. Heckler,* 749 F.2d 1562, 1566 (11th Cir.1985). She contends that the ALJ could not have adequately assessed her residual functional capacity without securing the testimony of a vocational expert ("VE").

■ This court has held that exclusive reliance on the Grids is inappropriate where non-exertional impairments prevent the performance of basic work skills. *See Francis,* 749 F.2d at 1566; *Walker v. Bowen,* 826 F.2d 996, 1003 (11th Cir.1987) (per curiam). We have also acknowledged, however, that the testimony of a VE is only necessary if the record is inconclusive as to a claimant's residual functional capacity. *See Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986). Holladay has not challenged the ALJ's interpretation of Dr. Vora's assessment of her ability to do work-related activities. Indeed, Dr. Vora's assessment is consistent with the Secretary's "sedentary work" classification, 20 C.F.R. § 416.967(a). Under these circumstances, we are compelled to hold that the ALJ was free to complete the evaluation process without the testimony of a VE.[3]

AFFIRMED.

---

1. The Secretary's regulations define sedentary work as that which "involves lifting no more than 10 pounds at a time and occasionally lifting articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). Sedentary jobs may require "a certain amount of walking and standing." *Id.*

2. Rule 201.24 in the Grids provides that (1) a younger individual (age 18–44), (2) with a limited education, (3) with no skilled work experience, and (4) who is capable only of sedentary work, is not disabled.

3. Even if the ALJ had secured the testimony of a VE, such testimony could not have altered the ALJ's judgment because the only non-exertional impairment alleged by Holladay is pain. Pursuant to the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423(d)(5)(A), subjective complaints of pain cannot, by themselves, be conclusive evidence of disability. Instead,

> there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that

results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability. *Id.* Given that Dr. Vora was uncertain as to the etiology of Holladay's pain, a VE's testimony could not have lifted Holladay over the barrier created by this statute.