**Mary A. GHOLSTON, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**Civil Action No. 03–M–400–N.**

United States District Court, M.D. Alabama, Northern Division.

Dec. 22, 2003.

Darryl W. Hunt, Clark & James, LLC, Birmingham, AL, for Plaintiff.

Martha Ann Miller, Leura Garrett Canary, U.S. Attorney's Office, Montgomery, AL, for Defendant.

## MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

Claimant Mary A. Gholston ["Gholston"] has filed this action seeking review of a

final decision by the Commissioner (Doc. # 1) pursuant to §§ 1602 and 1614(a)(3)(A) of the Social Security Act (R. 70). Upon review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be AFFIRMED for the reasons set forth herein.

## I. PROCEDURAL BACKGROUND AND FACTS

Gholston petitioned for supplemental security income under §§ 1602 and 1614(a)(3)(A) of the Social Security Act (R. 70). She was born on 19 February 1948 (R. 70). At the time of the hearing, Gholston was 53 years of age. When she applied for benefits, Gholston was working one day a week, at $45 per day (R. 71). Following her hearing before the Administrative Law Judge ["ALJ"] on 15 January 2002, he issue an adverse decision on 7 March 2002 (R. 29, 34). The Appeals Council denied Gholston's petition for review on 11 February 2003 (R. 6), thus rendering the ALJ's decision the Commissioner's final determination. This action was filed on 13 April 2003 (Complaint, Doc. # 1).

## II. STANDARD OF REVIEW

 The standard of review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983)). The court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence.[1] *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles v. Chater,* 84 F.3d at 1400 (citations omitted).

## III. DISCUSSION

### A. Standard for Determining Disability

An individual who files an application for Social Security disability benefits must prove that he is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled. *See* 20 C.F.R. § 416.920 (1999). The ALJ must evaluate the claimant's case using this sequential evaluation process, *Ambers v. Heckler,* 736 F.2d 1467, 1469 (11th Cir.1984), and the steps are as follows:

1. If the claimant is working or engaging in substantial gainful activity, he is not disabled. However, if the claimant is not working or engaging in substantial gainful activity, the Court must consider whether the claimant has a severe impairment.

---

1. In *Graham v. Apfel,* 129 F.3d at 1422, the Court of Appeals has stated that:
 Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

2. If the claimant does not have a severe impairment, he is not disabled. A severe impairment is defined as a condition that precludes one from performing basic work-related activities. If the claimant has a severe impairment, the Court must then consider whether the impairment has lasted or is expected to last for more than twelve (12) months.

3. If a claimant's impairment has lasted or is expected to last for a continuous period of twelve (12) months or more and it is either included on or equivalent to an item in a list of severe impairments, as found in Appendix I of the regulations, the claimant is disabled.

4. Even if a claimant is disabled according to all of the criteria enunciated in steps one (1) through three (3), if upon medical evaluation, it is determined that the claimant can return to his previous job, the claimant will not be entitled to benefits.

5. Finally, even if a claimant (a) is not working or engaging in substantial gainful activity; (b) has a severe impairment that is listed in Appendix I of the regulations (or may be considered and equivalent thereto); (c) that impairment has lasted or is expected to last for more than twelve (12) continuous months; and (d) he is not expected to be able to return to his previous job, if the Social Security Administration can show that the claimant is capable of performing a significant number of jobs that are available in the national economy, the claimant will not be considered disabled within the meaning of the Social Security Act. Therefore, he will not be entitled to benefits pursuant to 42 U.S.C.

§§ 401 et seq. and/or 42 U.S.C. §§ 1381.

*See* §§ 20 C.F.R. 404.1520(a)-(f), 416.920(a)-(f).

## B. *The ALJ's Findings*

The ALJ made the following findings within the structure of the sequential evaluation process as outlined above:

1. Gholston has not engaged in any substantial gainful activity since her alleged disability onset date (R. 28).

2. Gholston has the following severe impairments: fibromyalgia, a history of asthma, osteoarthritis, drug dependence, obesity, major depression, recurrent, mild to moderate, and anxiety disorder (R. 28).

3. Her listed impairments, when considered in individually and in combination, do not meet or equal in severity, any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 28).

4. Her representations of her ability to work are not credible (R. 28).

5. She cannot perform any past relevant work (R. 28).

6. Gholston has the residual functional capacity to perform light work (R. 28).

7. She does not have transferable skills within the residual functional capacity noted (R. 28).

8. She has the residual functional capacity to perform jobs that exist in significant quantities in the national economy including: facilities attendant, private household attendant, sorter, and routine hand worker (R. 28).

### C. Application of the Standard to the Claimant and Arguments of the Parties

Based on the ALJ's findings, Gholston survives step one and step two of the sequential evaluation process, because she is not engaged in any substantial gainful activities and she has severe impairments (R. 28). However, she does not survive step three because her severe impairments, when considered individually and/or in combination with others, do not meet the equivalent of a listed impairment. As a result, she is not disabled within the meaning of the Act. Nonetheless, the ALJ assessed Gholston's residual functional capacity. Thereafter, the ALJ determined that there were a number of jobs available in the national economy that Gholston could perform.

Upon review of the ALJ's decision, Gholston contends that the ALJ did not properly weigh the medical evidence. If he had, he would have determined that based on her mental limitations, she was disabled within the meaning of the Act. Specifically, she believes the issue for review is whether an opinion was formulated by a physician as to her residual functional capacity. In response, the Commissioner argues that substantial evidence supports her decision that an opinion as to Gholston's residual functional capacity was attained and that the status of her disability was properly deduced as a result thereof (Doc. # 12, p. 4). The Court agrees with the Commissioner.

The record is replete with medical records for the period 12 August 1998 to 5 November 2001 (R. 114–126, 127–141, 142–144, 145–148, 149–155, 156–173, 174–181, and 182–189). The cumulative content of the records is not at issue. Rather, at issue is the acceptance and proper credence to the report of Dr. Scott Bell ["Dr. Bell"], which was issued on 28 November 2000 (Doc. # 11, p. 6), when weighed against the findings of other physicians, particularly that of psychologist Curry Hammack ["Dr. Hammack"]. Therefore, the court has analyzed the comparative assignment of weight to Dr. Bell's report and Dr. Hammack's report, as they pertain to Gholston's residual functional capacity.

### D. Analysis of Evidence

#### 1. The Complaint and the Evidence

■ The gravamen of Gholston's complaint is

> [c]ertainly, at age fifty-four, possessed of a seventh grade education[,] an inability to read and write, and a history of only low semi-skilled past work, [she] should have been found disabled under the Grid Rules when determined by the ALJ to have an RFC for work performed at the light exertional level … At the very least, the ALJ should have ordered psychological testing which would have been sufficient to discern Plaintiff's intellectual functioning along with an assessment of whether or not she was, in fact, illiterate.

(Doc. # 11, p. 7). Importantly, Dr. Hammack performed a psychological examination of Gholston. During his examination, Dr. Hammack **did** assess Gholston's psychological state and relate that examination to her residual functional capacity.

> The client states that she sees and hears things that are not there; however, questioning did not really support any problems with hallucinations, either auditory or visual … Cognitively, she seems to be functioning within the Borderline Range. Intellectually, she should be able to handle domestic-type work activities, as well as assembly line work. However, her medical conditions may pose significant limitations there. In emotional matters, it is felt that her

depression and anxiety would pose mild-to-moderate limitations.

*DIAGNOSTIC IMPRESSION & SUMMARY*

... Observations would suggest that she is experiencing symptoms of depression as well as anxiety. Some mild OCD tendencies were also indicated. Based on obtained evaluation results, the following DSM–IV diagnoses are recommended:

Axis I—Major Depression, Recurrent, Mild–to–Moderate

— Anxiety Disorder, NOS

Axis II—Estimated Borderline Intellectual Functioning

Axis III—Reported fibromyalgia, respiratory problems, and high blood pressure

— S/P Hip and foot injury which required surgery

Axis IV—Limited social outlets

Axis V—55 [Global Assessment Functioning]

(R. 144).

While Gholston admits that the ALJ "devotes one paragraph of his decision to the summation of Plaintiff's records from the Montgomery Area Mental Health Authority" (Doc. # 11, p. 5), she contends that the ALJ

dismisses the value of this treating source noting that if a treating source's opinion on the issue of severity of impairment is well supported by medical evidence it is given controlling weight, but concluding that no treating source has offered such an opinion, nor one sufficient upon which to formulate the Plaintiff's Residual Functional Capacity.

(Doc. # 11, p. 5).

Dr. Bell, Gholston's alleged "treating physician", made the following observations:

*GENERAL APPEARANCE & OBSERVATIONS:* The claimant is sitting comfortably. She has thick-tongued speech. She is alert and oriented. She appears rather lethargic but otherwise oriented and appropriate with apparently adequate intellectual function although she has a lot of difficulty following commands. She has psychomotor retardation and generally appears overmedicated ...

**DIAGNOSES:**

1. Leg pains of unclear etiology, may be secondary to fibromyalgia or some early degenerative joint disease of her knees.

2. Psychomotor retardation and thick-tongued speech. She appears to be overmedicated, but it may be an effect of her medication such as her Risperdal. Her pupils suggest that she has been taking narcotics.

3. Obesity.

4. History of asthma.

**FUNCTIONAL ASSESSMENT/MEDICAL SOURCE STATEMENT:** I expect the claimant to be able to stand and walk for about six hours with limitations secondary to her obesity, general debilitated state, and the way she moved around the room. She really would not be able to walk with any fluidity or consistency. There are no restrictions on sitting. There is no need for an assistive device. I expect her to be able to lift and carry 10 pounds frequently and 20 pounds occasionally ... There are no manipulative limitations regarding reaching, handling, feeling, grasping or fingering objects. She does have relevant workplace/environmental limitations related to her ability to function mentally. She seems to have a lot of psychomotor retardation, a flat affect and thick-tongued speech, which suggest psychiatric disease, over medication or

effect of medication. Certainly in this state, she would not be able to follow commands and do any work with any necessary. fluidity or expeditiousness required in a general work environment. Certainly if she were given a repetitive task such as doing the same task over and over again she would be able to do this but without any speed. Again, I am not certain whether this if from psychiatric disease or from her medication. (R. 145–148). Dr. Bell's report is not ambiguous in its findings; it is, however, ambiguous in its conclusions regarding etiology. He is confident that, if Gholston "were given a repetitive task such as doing the same task over and over again she would be able to do this but without any speed." *Id.* Thus, emphasizing that Gholston has "no manipulative limitations regarding reaching, handling, feeling, grasping or fingering objects," he obviously believes that she has the ability to function in certain capacities and jobs. Moreover, even if Dr. Bell's report can be interpreted as a premise for Gholston's disability, he is unsure whether her "psychomotor retardation" or her "general debilitated state" are due to disease or overmedication. Under the circumstances, the ALJ's conclusions were reasonable and were based on the evidence before him. Thus, this court cannot find that the ALJ's conclusions regarding Gholston's residual functional capacity were unreasonable or erroneous.

### 2. The Weight of the Evidence

Gholston's basis for appeal is that the ALJ failed to give proper consideration to Dr. Bell's opinion on her psychological state. Purportedly, Dr. Bell was her treating physician. Instead, the ALJ adopted the opinion of a consulting psychologist, Dr. Hammack. In fact, neither Dr. Bell nor Dr. Hammack should be considered treating physicians who had a longstanding relationship with the claimant. Rather, both performed consultative examinations (R. 3).

Gholston's treating physicians were Drs. Wilson, Underwood, and Mukkamala (R. 3, 101). Additionally, she was seen a number of times at the Montgomery Area Mental Health Authority by a therapist, Sue Hardin (R. 100, 127–141). In support of the underlying basis of her complaint, i.e., the failure to give adequate consideration to her treating physician's report, Gholston emphasizes that

> the treatment notes [of Dr. Bell], [were] replete with details of psychiatric impairment and disorders, including diagnoses of excessive compulsive disorder, anxiety, personality disorder, depression, and various other attendant symptomology paired with the administration of an anti-psychotic medication, Risperdal, do serve to indicate that Plaintiff was, suffering from seriously limiting psychological impairments....

(Doc. # 11, p. 6).

The court disagrees with Gholston's position. Even assuming *arguendo,* that Gholston is correct in her underlying analysis, as a matter of law, the ALJ has the discretion to weigh objective medical evidence and may choose to reject the opinion of a treating physician while accepting the opinion of a consulting physician. Of course, if he follows that course of action, he must show "good cause" for his decision.

In the instant matter, the ALJ did not reject, in total, Dr. Bell's opinion. Instead, the ALJ did not assign to Dr. Bell's opinion the weight that Gholston preferred, especially with regard to her psychological state and residual functional capacity. The court finds that the ALJ showed good cause for his decision and as a result, it should stand. The ALJ stated:

If the treating source's opinion on the issue of severity of impairment is well supported by medical evidence, it is given controlling weight ... In this case, however, no treating source has offered such an opinion, nor one sufficient upon which to formulate the claimant's residual functional capacity ... Therefore, ... I give great weight to the opinions of Drs. Hammack and Bell ... Dr. Bell is Board Certified in Internal Medicine, Dr. Hammack is a Psychologist, and both are Program medical experts. Pursuant to 20 C.F.R. § 416.927(d)(5), we generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist ... I do not give any weight to Dr. Bell's narrative assessment to the effect that the claimant is suffering from disabling psychiatric impairments. Dr. Bell is not qualified in the field of psychiatry, nor as a vocational expert, nor did he perform a psychiatric evaluation. I accept instead Dr. Hammack's evaluation that she has a GAF of 55 and is not disabled for psychiatric reasons.

(R. 25). As further justification for his decision, the ALJ cited to Eleventh Circuit case law and stated the following:

The policy of the Social Security Administration and Office of Hearings and Appeals that impairments may not be established by professionals outside of their field, especially when no evaluation or examination was conducted in an area outside of their field of expertise in which they are nonetheless pronouncing the impairments, was very clearly and directly affirmed by the facts and the holding of the Eleventh Circuit in the case of *Edwards v. Sullivan,* 937 F.2d 580 (11th Cir.1991)[Emphasis added].

(R. 25). Because the ALJ has provided ample reasoning for his decision (taking the opinion of a specialist over that of a non-specialist), backed his decision by relevant rules on the matter as set forth in the Code of Federal Regulations, and cited case law to support his opinion, this court holds that his findings with regard to Gholston's mental abilities should be upheld.

In addition, this court notes that consultative examinations are not required by statute, although the regulations provide for them where warranted. *See* 20 C.F.R. § 404.1517.

(a)(1) *General.* The decision to purchase a consultative examination for you will be made after we have given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnoses, and prognosis) is readily available from the records of your medical sources.

(b) *Situations requiring a consultative examination.* A consultative examination may be purchased when the evidence as a whole, ***both medical and non-medical,*** is not sufficient to support a decision on your claim.

20 C.F.R. § 404.1519a (emphasis added).

■ While the court agrees with Gholston that it is reversible error for an ALJ to refuse to order a consultative examination when it is necessary for him to make an informed decision, *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir.1984), the ALJ is not required to do so unless the record-medical *and* non-medical—establishes the necessity for such an examination. *Holladay v. Bowen,* 848 F.2d 1206, 1210 (11th Cir.1988) (citing *Ford v. Secretary of Health and Human Services,* 659 F.2d 66, 69 (5th Cir.1981)) (emphasis added).

■ In this case, the ALJ met his burden. A consultative psychological exami-

nation was performed by a psychologist, Dr. Hammack, on 28 November 2000. The ALJ was not required to order another consult, especially given the fact that he found that the "opinions [of Drs. Hammack and Bell were] consistent with the weight of the evidence in this case, including records and reports obtained from the claimant's treating sources" (R. 25). Most importantly, this court does not re-weigh the evidence. It sits instead to determine whether substantial evidence supports the ALJ's decision. In this case, substantial evidence exists in support of the ALJ's decision. In consideration thereof, the ALJ did not err by not requesting a consultative physical examination.

## IV. CONCLUSION

Therefore, it is hereby ORDERED that the decision of the Commissioner is AFFIRMED.