[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13083
Non-Argument Calendar

_____

D.C. Docket No. 5:11-cv-00410-TBS

CATHERINE SMITH,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 13, 2012)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Catherine Smith appeals the magistrate judge's order affirming the administrative law judge's ("ALJ") denial of her application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g), and supplemental security income, pursuant to 42 U.S.C. § 1383(c)(3). After review, we affirm.[1]

## I. BACKGROUND FACTS

On April 13, 2007, Smith applied for benefits, alleging that she became disabled on February 12, 2007, when she fell at work and injured her hip and activated her breathing problems. Smith's medical records from 1999 to 2007 showed that she was treated for a variety of physical ailments during that time, most significantly breathing problems, hypotension, a head injury, fractured ribs and pain in her left hip and pelvis. Some of the medical records also noted that Smith has a history of anxiety and depression for which she was prescribed either Xanax or Zoloft.

In May 2007, a consulting psychologist, Dr. David Bortnick examined Smith. During the examination, Smith denied any psychological problems,

---

[1]We review the ALJ's decision in order to determine whether it is supported by substantial evidence, and whether the ALJ applied proper legal standards. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla, and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Id.

indicating that "it's all medical."  Smith stated that she only took Xanax prior to an

MRI to help her relax and that she did not take any other psychotropic medication.

Dr. Bortnick did not find any signs of anxiety, depression or cognitive impairment,

noted that Smith's recent and remote memory were intact and that she could pay

attention and concentrate.  Dr. Bortnick concluded that Smith had the mental

ability to work.  Two other consulting psychologists prepared "psychiatric review

techniques" in June and September 2007 indicating that Smith did not allege any

mental limitations, the medical record did not contain any functional limitations

resulting from a mental impairment, and there was no basis to conclude Smith

suffered from a mental diagnosis.[2]

On September 27, 2007, the Social Security Administration ("SSA") denied

Smith's applications.  Smith, represented by counsel, requested a hearing before

an ALJ.

At the September 9, 2009 hearing, Smith testified about her physical

problems that prohibited her from working.  Smith also testified about her 2009

---

[2]The SSA uses a "special technique" to assess whether a claimant has any medically determinable mental impairments and, if so, the resulting degree of functional limitation.  See 20 C.F.R. §§ 404.1520a, 416.920a.  At the initial and reconsideration levels of the administrative review process, application of the "special technique" is documented on a standard form, called the psychiatric review technique form (or PRTF), that is prepared by a consulting psychologist and the state agency disability examiner.  Id. §§ 404.1520a(e), 416.920a(e); SSR 96-8p, 1996 WL 374184 (July 2, 1996); Social Security Administration Program Operations Manual System §§ DI 22511.003, DI 22511.005.

breast cancer diagnosis, and stated that she did not want to undergo chemotherapy. A vocational expert testified that a hypothetical claimant with Smith's functional limitations would be unable to perform Smith's past relevant work, but would be able to perform other jobs that existed in the national economy. Because the ALJ determined that the record did not contain sufficient information about Smith's breast cancer, the ALJ requested further information from Dr. Michael Bernacki, Smith's treating physician.

Supplemental medical records indicated that Dr. Bernacki performed a core biopsy in May 2009, and the results indicated Smith had breast cancer. In response to the ALJ's request, Dr. Bernacki wrote a letter explaining that although he had done the preliminary workup and diagnosis, Smith was "noncompliant" with further treatment because of her "very limited ability to get around, and several other items." Dr. Bernacki stated that CT scans showed there was "no obvious metastatic disease," but that Smith needed a lumpectomy and therapy. Dr. Bernacki and Smith's oncologist had "made arrangements for her to have a lot of the bills covered" and had "gone out of [their] way in order to facilitate this but for some reason the patient is fixated on disability and her inability to get around." Dr. Bernacki observed that "there is a strange disconnect between her and the actual fact that she does have breast cancer and that it needs to be tended to as

4

soon as possible."

The ALJ found that Smith was not disabled.  Relevant to this appeal, the ALJ found that (1) Smith did not suffer from a severe mental impairment; and (2) although Smith had severe physical impairments of mild arthritis in the hips, history of asthma and a recent diagnosis of breast cancer with no clear evidence of metastasis, she retained the residual functional capacity to adjust to other jobs in the economy.

## II.  DISCUSSION

On appeal, Smith argues that, given her history of depression and anxiety, the ALJ failed to fully and fairly develop the medical record "by securing current medical evidence regarding her mental health and ordering a consultative psychological or psychiatric evaluation" after the SSA's September 2007 denial of her application.  Smith further argues that substantial evidence does not support the ALJ's finding that Smith's depression and anxiety were not severe mental impairments.

To be eligible for disability insurance benefits and supplemental security income, the claimant must be disabled.  42 U.S.C. §§ 423(a)(1)(E),

5

1382(a)(1)-(2).[3]  A person who does not have a severe impairment, or who can make an adjustment to other work, is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), (c), (g)(1), 416.920(a)(4)(v), (c), (g)(1).  A severe impairment is an impairment or combination thereof that significantly limits the claimant's physical or mental ability to do basic work activities.  Id. §§ 404.1521(a), 416.921(a).[4]  "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  McCruter v. Bowen, 791 F.2d 1544, 1546 (11th Cir. 1986); see also 20 C.F.R. §§ 404.1521(a), 416.921(a).  The claimant's "burden at step two is mild" and "allows only claims based on the most trivial impairments to be rejected."  McDaniel v. Bowen, 800 F.2d 1026, 1031

---

[3]In order to determine whether a claimant is disabled, the SSA applies a five-step sequential analysis.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).  In this process, the SSA considers whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe and medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform her past relevant work, in light of her residual functional capacity; and (5) can make an adjustment to other work, in light of her residual functional capacity, age, education, and work experience.  Id. §§ 404.1520(a)(4), 416.920(a)(4).  Smith's appeal implicates the second step—whether she had severe mental impairments.

[4]Basic work activities include physical functions, such walking, standing, sitting, pushing and pulling; the capacity for seeing, hearing, and speaking; the ability to understand, carry out, and remember simple instructions, to use judgment and to respond appropriately to supervision, coworkers and usual work situations; and the ability to deal with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).

(11th Cir. 1986).   However, a mere showing of a "deviation from purely medical standards of bodily perfection or normality" is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.  McCruter, 791 F.2d at 1547.

The ALJ has a basic obligation to develop a full and fair record, and must develop the medical record for the twelve months prior to the claimant's filing of her application for disability benefits.  Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).  This duty requires the ALJ to order a consultative examination when such an evaluation is necessary to make an informed decision.  Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988).  If the record contains sufficient evidence to allow an informed decision, however, the ALJ is not required to order a consultative examination.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007).

"Nevertheless, the claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim."  Ellison, 355 F.3d at 1276.  Additionally, a claimant must demonstrate that she was prejudiced by the ALJ's failure to develop the record before a due process violation will justify remand.  Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997).  In making this determination, we are "guided by

7

whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Id.

Here, the ALJ developed a full and fair record regarding Smith's depression and anxiety. First, the ALJ was only obligated to develop a medical record for the twelve months preceding the filing of Smith's applications for benefits, or from April 13, 2006 to April 13, 2007. See Ellison, 355 F.3d at 1276 (stating that the ALJ was not bound to develop the medical record for the two years after the claimant filed his application for benefits); see also 20 C.F.R. §§ 404.1512(d), 416.912(d) (stating that it is the SSA's responsibility to "develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[d] [his or her] application"). Smith does not argue that the ALJ failed to develop a medical record for this time period. Instead, Smith complains that the ALJ should have sought additional information relating to a period after May 2007. Under our precedent, the ALJ's duty did not extend so far.

In any event, the record does not reveal an evidentiary gap that clearly prejudiced Smith. Smith never alleged a mental impairment before the SSA. In May 2007, Smith told consulting psychologist Dr. Bortnick that the problems that prevented her from working were physical rather than mental, and, at her September 2007 administrative hearing, where she was represented by counsel,

8

Smith testified to only physical impairments.

In addition, nothing in the record suggests Smith's depression or anxiety worsened after September 2007 or that an additional psychological evaluation was needed.  Although Smith points to Dr. Bernacki's September 2009 letter, Dr. Bernacki was responding to the ALJ's request for more information about Smith's breast cancer.  Dr. Bernacki did not address any potential psychological disorders. We conclude that the record before the ALJ contained sufficient evidence to permit the ALJ to make an informed decision as to the severity of Smith's anxiety and depression.

We also conclude that substantial evidence supports the ALJ's finding that Smith did not suffer from a severe mental impairment.  While Smith's medical records reflect that Smith had a history of anxiety and depression for which she was prescribed Xanax and Zoloft, nothing in the record indicates that Smith experienced any effects from these mental impairments that could be expected to interfere with her ability to work.  In fact, Smith denied to Dr. Bortnick that she had any mental impairments that affected her ability to work, and, after conducting an examination, Dr. Bortnick agreed.

In sum, the ALJ fully and fairly developed the record regarding Smith's depression and anxiety and substantial evidence supports the ALJ's finding that

9

these mental impairments were not severe.  Accordingly, substantial evidence

supports the ALJ's conclusion that Smith was not disabled.

**AFFIRMED.**