[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15371
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00067-GRJ

WILBERT JOHNSON,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(July 9, 2015)

Before WILSON, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Wilbert Johnson appeals from the district court's order affirming the Commissioner of Social Security's final decision (Commissioner) to terminate Johnson's period of disability, disability insurance benefits, and supplemental security income due to medical improvement.  *See* 42 U.S.C. § 405(g) (providing for judicial review of any final decision of the Commissioner after a hearing); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998) ("[When] the Appeals Council denies review, the decision of the ALJ becomes the final decision of the [Commissioner]." (internal quotation marks omitted)).  After careful review of the parties' briefs and the record on appeal, we affirm the district court's order for the reasons set forth below.

## I.

In 2006, an Administrative Law Judge (ALJ) deemed Johnson disabled as of February 8, 2004.  Upon review of the record before him, the ALJ determined that Johnson suffered "severe impairments," including residuals from a prior left-hip fracture and intractable seizures, all stemming from a March 2004 car accident. The ALJ found that Johnson's seizure disorder met the criteria of section 11.03 of the Listing of Impairments (Listing) because the seizures continued despite a medication regimen.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.00, 11.03. The ALJ noted that Johnson was a surgical candidate due to the severity of his disorder and that Johnson testified that his mother had to help him with daily tasks.

2

In January 2011, following a continuing disability review, the Commissioner determined that Johnson was no longer disabled as of January 1, 2011, due to medical improvement.  Johnson appealed the Commissioner's termination of his benefits, and the appeal was denied.  Johnson next filed a timely request for a hearing before an ALJ.  An administrative hearing was held on January 11, 2012, followed by a supplemental hearing held on July 27, 2012.

To start the January 2012 hearing, Johnson requested an orthopedic consultative examination of his left hip.  The ALJ granted the request before continuing on with the hearing, during which both Johnson and a Vocational Expert (VE) testified.  Johnson testified at length regarding residual pain in his left hip, which he measured as an eight out of ten and which he asserted required him to use a cane two days a week; his depression for which he sought in- and out-patient treatment; his continued but irregular suffering from "mild seizures" similar to migraine headaches; and his typical day, which might include going to his sister's house, reading, and visiting the grocery store with his mother.

The VE testified in response to several hypothetical questions from the ALJ that took into account Johnson's impairments (including allegedly necessary use of a cane to ambulate), his age (then thirty-four years old), and his abilities.  The VE determined that, while Johnson was unable to perform his past work (which included work as a dishwasher, cook helper, and deliverer), there was work in the

regional or national economy that a person similarly situated to Johnson could perform.  According to the VE, any work performed by Johnson or any person similarly situated had to be simple, unskilled, and repetitive.  The VE offered examples of such work, including a packer for electronic components, a surveillance system monitor, and an order clerk for a food service.

The July 2012 supplemental hearing was held primarily to address the consultative orthopedic examination previously ordered by the ALJ.  Johnson objected to the resultant orthopedic report because the orthopedist did not perform an x-ray of Johnson's left hip.  The ALJ overruled Johnson's objection, pointing to the fact that the orthopedist had examined Johnson's left hip and had decided that an x-ray was unnecessary.

Johnson and a second VE testified at the July 2012 hearing, which testimony focused on Johnson's past relevant work.  The VE, after considering Johnson's past work and relevant hypotheticals propounded by the ALJ, concluded that, while Johnson could not perform his past relevant work, there were jobs that Johnson could perform, such as ticket taker, cashier, and office helper.  The VE conceded that those jobs would be eliminated if the person could not concentrate for thirty percent of the day due to seizures or was required to use a cane to stand or walk; however, the VE testified that there were still sedentary jobs that would enable such a person to work, including an addresser and a document preparer.

4

The ALJ also considered extensive documentary evidence of Johnson's medical history, including, among other things, a left temporal lobectomy performed in July 2007 to alleviate his seizures, management of pain in his right shoulder between 2009 and 2010, in-patient treatment for depression and alcohol abuse in December 2010, additional mental health treatment beginning in January 2011, and a few breakthrough seizures that occurred in April and May 2011 when Johnson tapered off his seizure medication.  In July 2010, Johnson's treating physician reported that he had been seizure free since April 2009, and Johnson's medical records fail to disclose any seizure-related issues after May 2011.

In the end, the ALJ agreed with the Commissioner, finding that Johnson's disability had ceased as of January 1, 2011, due to medical improvement.  The ALJ concluded that Johnson no longer suffered from an impairment or combination of impairments that met or equaled listed impairments.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ acknowledged that Johnson continued to have physical and mental impairments, but he found that such impairments had decreased in medical severity to the point where Johnson could perform certain light work.  Johnson's request for review of the ALJ's decision by the Appeals Council was denied, *see Falge*, 150 F.3d at 1322, and the instant action followed, *see* 42 U.S.C. § 405(g).

**II.**

In the case of a final determination as to continuing disability, we review the decision of the ALJ through the lens of the eight-step analysis required by the Code of Federal Regulations, *see* 20 C.F.R. § 404.1594(f), and the general substantial evidence standard of review.

In considering a claimant's continuing disability, the ALJ must determine whether there has been any medical improvement in the claimant's impairments since the claimant was first adjudged disabled and, if so, whether the medical improvement is related to the claimant's ability to work. *See id.* § 404.1594(a). "Medical improvement" means "any decrease in the medical severity of . . . impairment(s) . . . present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." *Id.* § 404.1594(b)(1). "Medical improvement is related to [the claimant's] ability to work if there has been a decrease in the severity. . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities . . . ." *Id.* § 404.1594(b)(3).

Section 404.1594(f) provides an eight-step sequential evaluation process for determining whether a claimant's disability continues: (1) whether the claimant is engaging in substantial gainful activity; (2) if not gainfully employed, whether the claimant has an impairment or combination of impairments that meets or equals a

6

listed condition; (3) if impairments do not meet a listing, whether there has been medical improvement; (4) if there has been medical improvement, whether the improvement is related to the claimant's ability to do work; (5) if there is improvement *not* related to the claimant's ability to do work, whether an exception to medical improvement applies, *see id.* § 404.1594(d), (e); (6) if medical improvement is related to the claimant's ability to do work or if an exception applies, whether the complainant has a "severe impairment," *see id.* § 404.1521; (7) if the claimant has a severe impairment, whether the claimant can perform past relevant work; and (8) if the claimant cannot perform past relevant work, whether the claimant can perform other work. *See id.* § 404.1594(f)(1)–(8).

We review an ALJ's decision as to continuing disability for substantial evidence, *see Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam), and we review the district court's judgment that substantial evidence supports an ALJ's decision de novo, *Falge*, 150 F.3d at 1322. "We also review for substantial evidence the ALJ's determination that a claimant's assertions of pain are not credible." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Substantial evidence means more than a scintilla "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Where an

ALJ's decision is supported by substantial evidence, we must affirm.  *See Mitchell*, 771 F.3d at 782.

## III.

Johnson challenges the ALJ's decision to discontinue his disability period and related benefits on three separate grounds, and we address each in turn.

First, Johnson contends that the ALJ's finding of medical improvement is not supported by substantial evidence.  We disagree.  Johnson was deemed disabled because he suffered from epilepsy that met the criteria of Listing 11.03, but the "totality" of the record on appeal—including medical records maintained by Johnson's treating neurologists—demonstrates that Johnson's condition has since significantly improved to the point where his impairment no longer meets or medically equals that listing.[1]  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03.

The record indicates that Johnson was seizure free from April 2009 through at least July 19, 2010.  During that time, Johnson reported doing well and seeing improvement in his quality of life; he was going to the gym and to class and engaged in other daily activities.  Johnson then experienced a few breakthrough seizure events in April and May 2011, but the record reflects that those events were

---

[1] While the 2006 decision finding Johnson disabled mentioned "residuals from a left hip fracture," the ALJ's finding of disability was based solely on Johnson's epilepsy.  Still, the ALJ considered Listing 1.00 (Musculoskeletal System) in reviewing Johnson's disability in 2012. The record indicates that the medical severity of Johnson's hip pain, which did not meet or equal Listing 1.00 in 2006, has also decreased given that he is able to ambulate effectively and to conduct personal activities both inside and outside of the house—and has been able to do so for some time.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b).

related to Johnson's self-tapering of his prescribed medications. When Johnson's medication was restarted, his symptoms improved, and, in December 2011, he reported no seizure activity. The record indicates that Johnson was seizure free prior to April 2011 and has remained seizure free since May 2011. *Cf. id.*

Because Johnson's condition has improved to the point where he does not meet or equal Listing 11.03, the ALJ correctly found that Johnson's medical improvement relates to his ability to work. *See* 20 C.F.R. §§ 404.1594(b)(3), 404.1594(f)(4). The record indicates that Johnson is able to perform light, unskilled work. Both of the VEs who testified at the hearings concluded that Johnson could not perform his past work; however, after considering hypotheticals that accounted for all of Johnson's impairments and took into account his age and background, each testified that Johnson could engage in gainful activity. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The VEs testified that Johnson could work as a ticket taker, cashier, or office helper or as a document preparer or addresser, and stated that those jobs existed in significant numbers in the national economy. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Johnson did not show and has not shown that he is unable to perform these jobs. *See id.*

We recognize that Johnson continues to suffer from legitimate functional and mental difficulties that may affect his quality of life. However, we cannot say, based on the record before us, that the ALJ's determination that Johnson

experienced a "decrease in the medical severity" of his epilepsy from the time he was first adjudged disabled, *see* 20 C.F.R. § 404.1594(b)(1), (c)(1), was not supported by substantial evidence. The record also compels us to agree that Johnson is able to engage in substantial gainful activity. *See id.* § 404.1594(a). Thus, the ALJ's determination that Johnson experienced "medical improvement" as of January 1, 2011, is due to be affirmed. *See Mitchell*, 771 F.3d at 782.

Second, Johnson argues that the ALJ erred in assessing Johnson's testimony. Where a claimant attempts to establish a continuing disability through his own testimony of pain or other subjective symptoms, a three-part "pain standard" applies. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). The "pain standard" requires: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225. "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.

The ALJ does not cite or refer to the language of *Holt*'s three-part test, but his findings and discussion indicate that the standard was applied. *See Wilson*, 284 F.3d at 1225–26. First, the ALJ cited to 20 C.F.R. § 404.1529, "which contains the

same language regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard." *Id.* at 1226. Second, it is evident from the ALJ's extensive analysis that he considered whether there existed an underlying medically determinable physical or mental impairment and whether Johnson's statements about the intensity, persistence, and functionally-limiting effects of the pain were substantiated by objective medical evidence. *See* § 404.1529(c)(1)–(4); *see also Wilson*, 284 F.3d at 1225.

In accord with the "pain standard," the ALJ found that Johnson's subjective claims were not confirmed by objective medical evidence and could not have reasonably have been expected to give rise to the pain alleged. *Cf. Holt*, 921 F.2d at 1223. He specifically stated "that [Johnson's] medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the residual function capacity assessment." *See* § 404.1529(c)(1). The ALJ also clearly articulated the bases for his findings, setting forth at length Johnson's testimony and the ALJ's reasons for not believing it to be wholly true. *See id.* § 404.1529(c)(1)–(4). *Cf. Holt*, 921 F.2d at 1223–24.

In assessing Johnson's testimony, the ALJ considered, among other things, Johnson's daily activities, treatments other than medication, and measures Johnson

11

used to alleviate his pain or symptoms. *See* § 404.1529(c)(3). For example, the ALJ noted that, among other activities, Johnson was able to shop for groceries, prepare his own meals, care for his own personal needs, do household chores, and read occasionally. He also attended church services and used public transportation. The ALJ found such activities "inconsistent with a complete inability to work."[2] *See id.* § 404.1529(c)(1), (3)–(4); *see also id.* § 404.1594(b)–(c).

The ALJ also discussed conflicts between Johnson's subjective pain testimony and the objective medical record. *See id.* § 404.1529(c)(4). The ALJ noted that, while Johnson testified that he continues to suffer from imbalance as a result of his 2004 hip surgery, has left hip pain four days a week, and uses a cane and has (but does not appear to presently use) a walker, the record did not reflect additional treatment for Johnson's left hip after January 2011.[3] The ALJ also observed that Johnson testified to "mild seizures that last [two to three] minutes," but the record indicated that Johnson had been seizure free prior to April 2011 and since approximately May 2011 due to a prescribed medication regime.

On this record, we do not find that the ALJ erred in assessing Johnson's testimony or otherwise failed to set out on the record his reasons for finding

---

[2] Contrary to Johnson's contention, we do not read the ALJ's decision to equate a "complete inability to work" with the definition of disability. Rather, the ALJ's statement relates to the veracity of Johnson's claims that he is unable to work for any period of time due to a seizure disorder and hip pain. *See* 20 C.F.R. § 404.1529(c)(4).

[3] Indeed, the record indicates that Johnson was referred to physical therapy and given a prescription for a rolling walker between October 2010 and January 2011 in order to treat his hip pain, but Johnson did not pursue those prescribed treatments. *See* § 404.1529(c)(3).

Johnson's statements "not credible to the extent that he claims disability." Johnson failed to present evidence sufficient to satisfy the elements of the pain standard. *Cf. Holt*, 921 F.2d at 1224. While Johnson "has some legitimate functional and mental difficulties since his alleged onset date," for which the ALJ accounted "by restricting him to light work," greater limitations are simply not supported by the record. Given that the record evidence is not consistent with Johnson's alleged disabling pain, the ALJ reasonably rejected Johnson's subjective testimony as only partially credible. *See Wilson*, 284 F.3d at 1226. In short, we find that the ALJ's credibility determination is supported by substantial evidence and resulted from a correct application of the law. *See id.*

Third and finally, Johnson asserts that the ALJ failed to fully and fairly develop the record because he did not order an x-ray of Johnson's left hip at the July 2012 hearing. "[T]he ALJ has a basic obligation to develop a full and fair record," *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam), which requires him to "order a consultative examination when such an evaluation is necessary for him to make an informed decision," *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (internal quotation marks omitted). Where the record contains sufficient evidence to allow an informed decision, however, the duty to fully and fairly develop the record does not impose the requirement to order a

13

consultative examination.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

The record does not support the conclusion that in order to fairly and fully develop the record the ALJ was required to order an x-ray of Johnson's left hip. The ALJ ordered a consultative examination by an orthopedist at the January 2012 hearing upon Johnson's request.  The orthopedist examined Johnson's left hip and diagnosed a condition in that hip; the orthopedist also completed a motion report form and a medical source statement of ability to do work-related activities.  The ALJ also had available medical records from another doctor who treated Johnson throughout 2009 and 2010 and evaluated Johnson's left hip on multiple occasions. Presented with ample evidence of the nature and extent of Johnson's hip problems, the ALJ was more than able to make an informed decision based on the record before him.  *See id.*  An x-ray was not necessary under the circumstances, and the ALJ did not breach his duty to fully and fairly develop the record by refusing to order one.

For the foregoing reasons, the district court's order affirming the Commissioner's final decision terminating Johnson's period of disability, disability insurance benefits, and supplemental security income due to medical improvement is

**AFFIRMED**.

14